If the case stood alone upon the mental incapacity of Jesse Whitaker, deceased, we might feel constrained to send it to a jury to have an issue on that point tried.
It seems an inquisition was had in Buncombe, according to the usages of law, which resulted in a verdict that the subject was non compos *Page 390 mentis, which was reported to the county court at its April Session, 1857. From this there was an appeal to the Superior Court of the county, and this appeal was pending at the time of his death.
The evidence which has been laid before us preponderates, we feel at liberty to say, in favor of the finding of the jury; but as the inquisition was not finally acted upon and settled by a jury upon testimony viva voce, it would be more in accordance with the caution with which this Court proceeds in matters of so great importance to send it to the customary tribunal to have the fact established the one way or the other.
 But we do not think the case necessarily turns upon this point. There are other well-settled principles of equity which dispose of it.
(597) Whatever may be the degree of doubt left upon the precise mental condition of Jesse Whitaker, about the time of the transactions in question, if he could not at that time be properly classed amongst non compos mentis technically, it is nevertheless certain that he was very old, was prostrated by disease and intemperance, and his memory and will, at least, exceedingly uncertain and fluctuating.
He was advised by friends, upon whose counsel he had theretofore relied, not to make the bargain without further information; and it was then understood and agreed, the defendant Brown being present, that no further action should be taken in the matter until the information needed was obtained.
After this arrangement, the friends of Whitaker left the house, and thereupon Brown, having remained, renewed the negotiation and effected the alleged sale of his land.
The further fact in this case is established to our satisfaction, that the price demanded and received for the land is twice its true value.
Here, then, are extreme imbecility of mind in the subject of the alleged fraud, an opportunity selected when he was "without counsel," in fraud of an agreement, secrecy in the transaction, and imposition in the price.
These are sufficient, we think, to call into action the interference and aid of this Court.
This occasion or source of equity jurisdiction is fully explained inAmis v. Satterfield, 40 N.C. 173, and Freeman v. Dwiggins, 55 N.C. 162.
The voluminous evidence which had been filed in this cause establishes with sufficient clearness the narrative we have given as the true state of the facts, according to the interpretation most favorable to the defendant, and the cases establish the principle that the Court will (598) annul a contract made under such circumstances, and remit the parties, as far as it is practicable to do so, to their previous positions. To this end a decree may be drawn perpetuating the injunctions *Page 391 
heretofore granted, annuling the contract marked A in the papers, and directing a return of such notes, orders, or other securities as were given for the purchase money.
NOTE. — A conveyance will be set aside on account of the exercise of undue influence or of circumvention. Burroughs v. Jenkins, 62 N.C. 33;Elliott v. Logan, id., 163; Hartly v. Estis, id., 167; Earl v. Bryan, id., 278; Hill v. Brewer, 76 N.C. 124. See, also, Harshaw v. McCombs, 63 N.C. 75.